UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                  Case Number: 16-12464-7

    BRADLEY A. STROM,

        Debtor.

---

## **MEMORANDUM DECISION**

On July 18, 2016, Bradley A. Strom ("Strom" or "Debtor") commenced the instant bankruptcy case by filing a voluntary petition under chapter 7 of the Bankruptcy Code. He received a discharge on February 13, 2017. The Trustee filed a Final Report on December 20, 2016. Lakeview Care Partners, Inc. ("Lakeview"), a creditor, filed an objection to the Final Report. Lakeview asks the Court to disapprove the Final Report and require the Trustee to pursue collection of the amount of the Lakeview debt from Strom's ex-wife, Cheryl Dettmering ("Dettmering"), on the ground it is excepted from discharge pursuant to 11 U.S.C. § 523(a)(15) as a debt assigned to Dettmering by the terms of the parties' Marital Settlement Agreement ("MSA").

The Court has jurisdiction over this proceeding by virtue of 28 U.S.C. § 1334(b), and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

The parties do not dispute the relevant facts. Dettmering petitioned for dissolution of her marriage to the Debtor on February 17, 2012. A Judgment of Divorce incorporating the provisions of the MSA was entered on March 17, 2014. The MSA assigned responsibility for the Lakeview debt to Dettmering. On February 25, 2015, Lakeview filed suit against Dettmering and the Debtor

claiming the sum of $101,362.50 for services provided to Strom in 2012 and 2013. Lakeview was granted a judgment against both parties, jointly and severally.

Dettmering filed bankruptcy on December 29, 2016. She received a discharge on April 25, 2016. Lakeview was listed as a creditor. Their claim was discharged in her case.

As indicated, Strom filed this bankruptcy case in July 2016. Lakeview was scheduled as a creditor and filed a proof of claim. Strom received a discharge that included discharge of the Lakeview debt. Thus, neither Strom nor Dettmering have any remaining liability on the Lakeview debt.

Despite the discharges of the debt to Lakeview, it argues the Trustee should pursue collection from Dettmering. Its argument is based on the theory that since responsibility for payment was assigned to Dettmering by the MSA, it is a nondischargeable debt owed to a former spouse and the Trustee should be required to step into the shoes of the debtor to enforce the MSA and collect the amount of the Lakeview judgment from her.

## DISCUSSION

Section 523(a)(15) of the Bankruptcy Code provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any *debt*—
>
> . . .
>
> > (15) to a *spouse, former spouse*, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a

2

>determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15) (emphasis added).

Section 523(a)(15) governs the dischargeability of property settlement debts as opposed to support obligations. This exception was intended to negate the distinction between support and property division provisions (except in Chapter 13 cases) by making both support and nonsupport debts nondischargeable. *Hebel v. Georgi (In re Georgi),* 459 B.R. 716, 720 (Bankr. E.D. Wis. 2011). All debts owed to a spouse, former spouse, or child of a debtor are nondischargeable if incurred during a marital dissolution proceeding. *Zimmermann v. Hying (In re Hying),* 477 B.R. 731, 735 (Bankr. E.D. Wis. 2012).

When deciding whether a particular debt falls within a section 523 exception, the statute is generally construed strictly against the creditor and liberally in favor of the debtor. *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000). That policy is somewhat varied when the debt at issue arises from a divorce agreement or decree. *In re Crosswhite*, 148 F.3d 879, 881-82 (7th Cir. 1998). The reason for the tempering of the policy in divorce-related obligations is the determination of Congress that sections 523(a)(5) and (15) express intent to protect former spouses in matters of alimony, maintenance, support and divorce-related obligations despite the Code's fresh start policy. *Id.*

Were the applicability of section 523(a)(15) to a support obligation or property division the sole issue, the inquiry would end here. However, the fundamental dispute is whether there is an obligation or debt to the Debtor

3

that could form the basis for a claim against Dettmering.[1] In other words, whether any claim, debt or obligation was extinguished when both the Debtor and Dettmering received discharges of the debt to Lakeview.

A provision in a divorce decree to hold harmless or indemnify a spouse for joint obligations incurred during a marriage creates a "new" debt, running solely between the former spouses. *Schweitzer v. Schweitzer (In re Schweitzer)*, 370 B.R. 145, 150 (Bankr. S.D. Ohio 2007). While this "new" debt is "incurred" through the divorce decree, the parties' personal liability with respect to their joint third party creditors remains unless discharged. *Damschroeder v. Williams (In re Williams)*, 398 B.R. 464, 469 (Bankr. N.D. Ohio 2008). As explained in *Wellner v. Clark (In re Clark)*:

> [T]he exception to discharge for "hold harmless" agreements may not provide protection from creditors for the non-debtor spouse. The debts owed to the joint creditors are discharged as to the debtor only. The obligation that is not dischargeable in these situations is a debtor's responsibility to hold his non-debtor, ex-spouse harmless. The non-debtor ex-spouse may look to the debtor for reimbursement pursuant to any nondischargeable "hold harmless" obligations, but the non-debtor ex-spouse is not immune from pursuit by the primary joint creditors.

207 B.R. 651, 657 (Bankr. E.D. Mo. 1997).

Dettmering incurred that "new debt" when the judgment incorporating the MSA was granted. The liability of the Debtor on any joint debts or debts subject to recovery under the Lakeview judgment continued to exist as to him, even though Dettmering was assigned payment of those debts in the decree,

---

[1] A "claim" includes contingent liabilities. 11 U.S.C. § 101(5). Section 101(12) defines "debt" as "liability on a claim." Section 523 addresses exceptions to *debts.*

4

because at the time of her bankruptcy he was still subject to pursuit by Lakeview. However, he is no longer exposed to collection action by Lakeview because his liability on that debt has been discharged. Thus, there is no debt owed by him and any contingent liability has been extinguished.

The facts in this case distinguish it from all the cases relied upon by Lakeview. In each of the cases cited by Lakeview, the non-debtor spouse remained liable on a debt and was at risk of collection actions. That is not the case here.

Lakeview is not entitled to collect from either the Debtor or Dettmering. There is no circumstance under which Strom has any exposure or liability on the Lakeview debt. Thus, Lakeview seeks to accomplish indirectly—having the trustee pursue collection of the amount of its judgment—what it could not accomplish directly—collecting the amount itself. This is contrary to the fresh start policies of the Code and to the purpose underlying the exception to discharge.

The legislative history of section 523(a)(15) provides further confirmation that pursuit of the amount of the Lakeview claim under an indemnity or hold harmless theory is without basis:

> The . . . exception . . . must be raised in an adversary proceeding during the bankruptcy case . . . [o]therwise the debt in question is discharged. *The exception applies only to **debts** incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital* debts *that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the **spouse** or former **spouse**—an obligation to hold the **spouse** or*

5

> *former* **spouse** *harmless—which is within the scope of this section.*
> See In re MacDonald, 69 B.R. 259, 278 (Bankr. D.N.J. 1986).

140 Cong. Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks) (emphasis added).

Lakeview argues that while there was no specific hold harmless or indemnification in the MSA related to the Lakeview debt, it can be inferred. Even though such provisions can be implied and obligations in an MSA create a "new" debt, that does not change the outcome in the present case. The personal liability of both Strom and Dettmering with respect to Lakeview was discharged. There is no longer any obligation that could be subject to a hold harmless. Since Strom is immune from pursuit by Lakeview, there is no debt or claim he could pursue against Dettmering under the MSA. Lakeview cannot revive its claim against Dettmering in this creative manner. There is no longer a debt or claim between Strom and Dettmering under the MSA for the Lakeview debt and, therefore, nothing to be pursued by the Trustee.

## CONCLUSION

There is no indication in the Code or its history that Congress considered it important that a debtor's creditors be protected by requiring a trustee to pursue recovery from an ex-spouse for payment of a contingent debt that has been discharged as to the debtor and the ex-spouse. For the reasons stated above, the objection to the Final Report is overruled. An order consistent with this Memorandum Decision will be entered.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated: June 21, 2017

BY THE COURT:

_____
Catherine J. Furay
U.S. Bankruptcy Judge